1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURELIA A. HERNANDEZ,<br><br>                              Plaintiff,<br><br>        vs.<br><br>DOWNEY SAVINGS AND LOAN<br>ASSOCIATION, F.A.; DEUTSCHE BANK<br>NATIONAL TRUST COMPANY, as<br>Trustee; FCI LENDER SERVICES, INC.;<br>and DOES 1-10,<br><br>                              Defendants. | CASE NO. 08cv2336-IEG (LSP)<br><br>**ORDER DENYING MOTION FOR<br>PRELIMINARY INJUNCTION**<br><br>**(Doc. No. 9)** |

        On March 3, 2009, plaintiff requested a TRO and preliminary injunction to prevent defendant Deutsche Bank National Trust Company ("Deutsche Bank")  from enforcing a writ of execution against her residence.  On March 3, 2009 the Court issued a TRO and an Order to Show Cause why it should not issue a preliminary injunction against defendants.  (Doc. No. 9.)  U.S. Bank National Association ("U.S. Bank"),  acting on behalf of Downey Savings and Loan Association, F.A. ("Downey") filed an opposition on March 11, 2009.  (Doc. No. 13.)  The Court heard oral argument on March 17, 2009.  After reviewing the parties' submissions, and for the reasons set forth below, the Court DENIES the motion for preliminary injunction.

*///*

*///*

**BACKGROUND**

**A.     The Parties**

Plaintiff Aurelia Hernandez was the owner of the property at 226 West 10th Avenue, Escondido, California 92025 ("property"), and is the property's current occupant.

Defendant Downey was the originator of plaintiff's loan. Defendant Deutsche Bank was the agent and trustee for Downey. FCI Lender Services ("FCI") was the foreclosure trustee responsible for conducting the trustee's sale on the property. Defendant U.S. Bank is the Successor in Interest for the FDIC, who placed Downey into receivership after Downey became insolvent.[1]

**B.     Factual Background**

The following facts are taken primarily from plaintiff's first amended complaint ("FAC"). On May 11, 2006 Downey loaned plaintiff $296,000 to refinance her home. The loan was secured by a deed of trust which gave Downey a power of sale against the property. On May 12, 2006 Downey made disclosures about the loan, as required by the federal Truth in Lending Act ("TILA").

The adjustable rate note plaintiff signed (Ex. 1 to FAC) carried an effective interest rate of 8.018%. The initial rate of the loan, called a "teaser rate" was 2%. The loan also contained a yield spread premium ("YSP") in the amount of $9,620 (equivalent to 3.25% of the entire loan).[2] The total broker and lender fees were $10,600. There was a pre-payment penalty of $4,883.

Plaintiff contends that Downey failed to disclose that the YSP had the effect of increasing the built-in cost of the loan. Plaintiff states the YSP had the effect of increasing the interest rate of the note and plaintiff's monthly payment. Because the YSP affected the interest rate and payment structure, the negative amortization of the loan was also affected, resulting in an increase of the principal due if plaintiff did not make a high enough monthly payment to cover the interest.

Plaintiff paid her mortgage current through October 2007. On March 27, 2008, FCI caused a Notice of Default to be recorded in the San Diego County Recorder's Office. (Ex. 3 to FAC.) The

---

[1]   U.S. Bank now represents Downey's interests in this lawsuit. Insofar as this Order references Downey, the Court's analysis and conclusions are equally applicable to U.S. Bank.

[2]   A YSP is a fee paid by a mortgage lender to a mortgage broker "based on the difference between the interest rate at which the broker originates the loan and the [] market rate offered by the lender. . . ." Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1005 (9th Cir. 2002).

1    Notice of Default stated that plaintiff owed $4,956.04 as of February 20, 2008.

2         On July 31, 2008 at 1:48 a.m. plaintiff sent a Notice of Rescission and a Notice of Tender as

3    required by TILA to Downey, Deutsche Bank, and FCI.  The bases of the notice were violations of

4    TILA and Regulation Z.  Downey did not cancel the note, void the deed of trust, or return the

5    settlement charges of the loan.  Instead, on July 31, 2008, FCI conducted a trustee's sale of the

6    property.  The property was sold to Deutsche Bank, acting as trustee for Downey.

7         Plaintiff filed for Chapter 13 bankruptcy on December 13, 2008.  This claim was dismissed

8    on January 8, 2009.  Plaintiff filed for Chapter 7 bankruptcy on January 12, 2009.  Plaintiff now seeks

9    an injunction from Deutsche Bank's enforcement of the writ of execution that will force her from the

10   property.

11   **C.    Procedural Background**

12        On November 5, 2008 plaintiff filed a complaint in California Superior Court for the County

13   of San Diego.  On December 17, 2008 U.S. Bank removed the action to this Court.  (Doc. No. 1.)

14   Plaintiff filed a first amended complaint ("FAC") on February 23, 2009.  (Doc. No. 7.)  The FAC

15   asserts claims for: (1) violations of TILA; (2) violations of Cal. Civ. Code § 2924 *et seq.*; and (3)

16   rescission based on fraud and unilateral mistake of fact pursuant to Cal. Civ. Code § 1689(b)(1).

17        On March 3, 2009, plaintiff requested a TRO and preliminary injunction.  The Court granted

18   the TRO and set the preliminary injunction hearing on March 17, 2009 at 9:30 a.m.

19                              **LEGAL STANDARD**

20        When pursuing an injunction, all courts agree a plaintiff must show "irreparable injury" and

21   that legal remedies are "inadequate."  Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th

22   Cir. 1987).  However, the Ninth Circuit uses two alternative tests to evaluate the propriety of a

23   temporary restraining order or a preliminary injunction.  Under the "traditional test," courts implement

24   four factors to evaluate the application:

25             (1) the likelihood of the moving party's success on the merits; (2) the
               possibility of irreparable injury to the moving party if relief is not
26             granted; (3) the extent to which the balance of hardships favors the
               respective parties; and (4) in certain cases, whether the public interest
27             will be advanced by granting the preliminary relief.

28   Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc., 367 F.3d 1108, 1111 (9th Cir.

2004). Alternatively, courts require the moving party to "demonstrate either (a) probable success on the merits combined with the possibility of irreparable injury or (b) that she has raised serious questions going to the merits, and that the balance of hardships tips sharply in her favor." Bernhart v. County of Los Angeles, 339 F.3d 920, 925 (9th Cir.2003). These are not two separate tests, but rather two points on a sliding scale in which the required showing of harm varies inversely with the required showing of meritoriousness. Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003). Because a preliminary injunction is an extraordinary remedy, the movant must carry its burden of persuasion by a "clear showing." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

**DISCUSSION**

**A.      Likelihood Of Success On the Merits**

In order to obtain a preliminary injunction, plaintiff must show that she is "likely" to prevail on the merits. Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 665 (2004). This means plaintiff "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988).

The parties raise several issues relevant to plaintiffs' ability to succeed on the merits. First, U.S. Bank disputes whether plaintiff has standing to bring the suit. Second, the parties debate whether the timing of Downey's loan disclosures violated TILA. Third, the parties discuss whether rescission is warranted based on state law due to Downey's alleged failure to adequately disclose the effect of the YSP. Fourth, plaintiff generally alleges that Downey's arithmetic was incorrect on the notice of default. Plaintiff has not demonstrated a fair chance of success on the merits. Although the standing issue is dispositive, the Court addresses the merits of the other issues in turn.

*1.      Standing*

a.      Parties' Arguments

U.S. Bank argues plaintiff lacks standing to bring this entire claim because her lawsuit is the property of her bankruptcy estate. U.S. Bank claims the bankruptcy code places an affirmative duty on a debtor to schedule all assets in the bankruptcy petition, and those assets include causes of action

that accrued prior to the petition.  Upon filing for bankruptcy, these causes of action are placed, along with the petitioner's other assets, into the bankruptcy estate.  U.S. Bank argues the right to pursue a cause of action reverts to the debtor only upon the bankruptcy trustee's abandonment of it, or the closure of the bankruptcy case.  U.S. Bank argues neither condition has been fulfilled in this case and plaintiff therefore lacks prudential standing and is not a real party in interest.

Plaintiff does not directly address the standing issue in her TRO application.  Instead, she attaches a declaration by her attorney, Mr. Shoemaker.  Mr. Shoemaker declares that plaintiff filed for Chapter 13 bankruptcy on December 13, 2008 and Chapter 7 bankruptcy on January 12, 2009.  He states that "[d]ue to careless actions by Plaintiff's bankruptcy attorney, an automatic stay was not in place or extended after January 17, 2009."  (Shoemaker Decl. ISO TRO App. ¶ 4.)  Mr. Shoemaker explains that Deutsche Bank filed a motion for "relief from stay" of the writ of execution in the bankruptcy court.  Although plaintiff's bankruptcy attorney filed an opposition, he did not set a hearing date.  Mr. Shoemaker states that as a result of this oversight  Deutsche Bank's motion was granted and plaintiff was subjected to the writ of execution.  Mr. Shoemaker then appears to argue that the Court must analyze the "original loan itself," because its defects "throw[] [the] foreclosure process and post-foreclosure process into question."  (Id. ¶ 10.)

b.    Analysis

i)    Plaintiff's Claims are the Property of the Bankruptcy Estate

The act of filing a petition for relief under the Bankruptcy Code begins a bankruptcy case and creates an estate in bankruptcy.  See 11 U.S.C. §§ 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.") and 541 (governing the property of a bankruptcy estate).  The property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2009).  It is well settled that prepetition causes of action, including TILA claims, are assets included within the meaning of property of the estate.  See In re Smith, 640 F.2d 888, 890 (7th Cir. 1981) ("there is no question . . .that the [bankruptcy] estate includes causes of action such as [] truth-in-lending claims. . . ."); Rowland v. Novus Fin. Corp., 949 F. Supp. 1447, 1453 (D. Haw.

1996).[3]  Accord Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001) (assets of plaintiff's bankruptcy estate included prepetition causes of action for unpaid royalties).

Here, plaintiff brought suit on November 5, 2008.  She filed for Chapter 7 bankruptcy on January 12, 2009.  Her prepetition claims are therefore the property of her bankruptcy estate. Plaintiff's amendment of her complaint to include TILA causes of action *after* she filed for Chapter 7 bankruptcy does not change this conclusion.  The causes of action in her amended complaint accrued for bankruptcy purposes when the newly alleged claims "could have been brought." Cusano, 264 F.3d at 945.  In this case, the illegal activity plaintiff alleges in the amended complaint occurred in May 2006 at the earliest (when Downey allegedly made improper disclosures) and July 2008 at the latest (when Downey refused to honor plaintiff's rescission request); her claims therefore accrued before she filed for bankruptcy.

           ii)       Plaintiff Lacks Standing to Assert Claims that Otherwise Belong to the Bankruptcy Estate

Plaintiff lacks standing to bring her claims unless she can show the claims were: (1) exempt from the bankruptcy estate or (2) abandoned by the bankruptcy trustee.  Rowland, 949 F. Supp. at 1453.  As discussed below, plaintiff has not made either showing.

Section 522 of the Bankruptcy Code specifies the federal property exemptions available to debtors.  However, to qualify for these exemptions, the Code requires that the debtor "shall file a list of property that the debtor claims as exempt."  11 U.S.C. § 522 (2009).  If a Chapter 7 debtor claims her prepetition causes of action under the bankruptcy exemption, she has standing to bring those claims. Id. at 1454 (citing Wissman v. Pittsburg Nat'l Bank, 942 F.2d 867, 870 (4th Cir. 1991)).  If the debtor does not file such a list, the property it is not exempt and the bankruptcy trustee may dispose of it as he sees fit.  Smith, 640 F.2d at 891.  Here, plaintiff has not shown or even alleged that her claims fall under any Bankruptcy Code exemptions.  She has also not shown that she has made the required claims for such exemptions.  Therefore, her causes of action remain with the bankruptcy

---

[3]  In Rowland, the plaintiff refinanced his home with a loan secured by his property. A year later he attempted to rescind the transaction.  Two days after that attempt he sued the mortgagee for rescission under TILA.  A year later, he filed for Chapter 7 bankruptcy.  The court found that his cause of action was included in the bankruptcy estate.  It further found that he did not have standing to bring the claim because he did not allege the claim was exempt from the estate or abandoned by the bankruptcy trustee.  Rowland, 949 F. Supp. at 1453-54.

1    estate unless the bankruptcy trustee has abandoned them.  <u>See</u> 11 U.S.C. § 554 (2009) (providing the

2    means for abandonment of property of bankruptcy estate);  <u>Rowland</u>, 949 F. Supp. at 1454.

3         A trustee in bankruptcy is the representative of the estate, and has the capacity to sue and be

4    sued.  11 U.S.C. § 323 (2009).  A Chapter 7 debtor may not prosecute a cause of action belonging to

5    the bankruptcy estate unless the claim has been abandoned by the trustee.  <u>Rowland</u>, 949 F. Supp. at

6    1454; <u>Griffin v. Allstate Ins. Co.</u>, 920 F. Supp. 127, 130 (C.D. Cal. 1996).  Abandonment of estate

7    property may occur: by the trustee after notice to creditors and a hearing (Fed. Bankr. R. 6007 (2009);

8    11 U.S.C. § 554 (a) (2009)); on request of a party in interest after notice and a hearing (11 U.S.C. §

9    554 (b) (2009)); or when the case is closed and the trustee has not otherwise administered the

10   property.  (<u>Id.</u>, § 554 (c)).  Here, plaintiff has not shown or even alleged that her causes of action have

11   been abandoned by the bankruptcy trustee in any of the aforementioned ways.

12        Under Fed. R. Civ. P. 17(a) (2009), "[a]n action must be prosecuted in the name of the real

13   party in interest."   Because plaintiff's lawsuit belongs to her bankruptcy estate,  and the trustee has

14   not abandoned plaintiff's causes of action, plaintiff is not the real party in interest in this case.

15   <u>Dunmore v. United States,</u> 358 F.3d 1107, 1112 (9th Cir. 2004) (holding that the plaintiff, who had

16   failed to schedule his legal claims as assets on his Chapter 7 bankruptcy petition, lacked prudential

17   standing to pursue those claims because they belonged to the bankruptcy estate).  Although plaintiff

18   may take steps to cure the standing problem, such as by substituting the bankruptcy trustee or showing

19   the Court why it is not necessary to do so (<u>see</u> <u>Rowland</u>, 949 F. Supp. at 1461), she has not taken such

20   steps.  Plaintiff therefore cannot demonstrate likelihood of success on the merits.

21   2.     *The Three-Year Right of Rescission Does Not Apply*

22          a.     Parties' Arguments

23        According to plaintiff, TILA requires that disclosures be made before consummation of the

24   loan transaction under 12 C.F.R. § 226.17 ("Reg. Z").  Plaintiff alleges Downey did not make the

25   required disclosures until May 12, 2006, the day after plaintiff signed the loan, and this delay

26   constituted a violation of TILA triggering a three-year rescission period.  Plaintiff argues it was a

27   further violation of TILA when Downey did not respond to her rescission request.

28

1    U.S. Bank argues plaintiff's TILA-based rescission claims are time-barred because the three

2    year right to rescind is only triggered when the lender *wholly fails* to provide the borrower with the

3    required disclosures.  U.S. Bank argues that if plaintiff's allegations are true that Downey did not

4    make the required loan disclosures until May 12, 2006, plaintiff only had the right to rescind until May

5    16, 2006 (the third business day after she was provided the disclosures).  U.S. Bank cites to 15 U.S.C.

6    § 1635 (a) and (f) to support its argument.

7    　　　　b.　　Analysis

8    　　　Although plaintiff is correct that 12 C.F.R. § 226.17 requires that "[t]he creditor shall make

9    disclosures [required by this subpart] before consummation of the transaction," there is no support in

10   statutes or case law for the argument that a creditor's failure to do so triggers the three-year right of

11   rescission.  TILA's "buyer's remorse" provision allows borrowers three business days to rescind,

12   without penalty, a consumer loan that uses their principal dwelling as security. 15 U.S.C. § 1635(a)

13   (2009).  Under 15 U.S.C. § 1635(a), which is further explained at 12 C.F.R. § 226.23(a)(3), a

14   consumer has the right to rescind until the third day after the transaction is consummated, the notice

15   of right to rescind is delivered, or all material disclosures are delivered.[4]  The statute therefore

16   contemplates situations in which disclosures are not made before consummation of the loan.

17   Accordingly, only when the creditor *fails to deliver* the forms, or *fails to provide* the required

18   information does the right to rescind extend for three years after the transaction's consummation. Id.

19   § 1635(f); 12 C.F.R. § 226.23(a)(3).

20   　　　Plaintiff's main argument in support of her TILA cause of action is that the disclosures were

21   untimely.  Since Downey provided the documents to plaintiff, the three-year rescission period does

22   not apply.  Accord Colanzi v. Sav. First Mortg., LLC, 2007 U.S. Dist. LEXIS 84416, at *5-7 (E.D.

23   Pa. Nov. 15, 2007) (finding the plaintiff's claim that she did not receive material disclosures until over

24   two weeks after she signed loan documents did not entitle her to an extension of the rescission period

25   to three years).  Plaintiff's rescission was therefore untimely, and defendants did not violate TILA

26

27   　　　　[4] "[T]he obligor shall have the right to rescind the transaction until midnight of the third
     business day following the consummation of the transaction or the delivery of the information and
28   rescission forms required under this section together with a statement containing the material
     disclosures required under this title, whichever is later. . . ." 15 U.S.C. § 1635(a) (2009).

1   when they did not respond to plaintiff's request to rescind.

2        To the extent plaintiff claims Downey's disclosures of the effect of the YSP were inadequate,

3   TILA does not require such disclosures. The Court discusses this issue further in Section A(3) *infra*.

4   **3.      Deficiencies in Disclosures of the Yield Spread Premium**

5             **a.      Parties' Arguments**

6        Plaintiff's third, fourth and fifth causes of action request rescission of the foreclosure sale, the

7   note, and the trustee's deed. Plaintiff claims the $9,620 YSP, equivalent to 3.250% of the amount

8   financed, increased the interest rate of the entire note by 1.625%, or $232.19 per payment. Although

9   plaintiff concedes that Downey disclosed the *amount* of the YSP, she alleges Downey impermissibly

10  failed to disclose the *effect* of the YSP on her interest rate.[5] Her rescission claims are based on the

11  arguments that: (1) Downey's inadequate disclosures violated Cal. Civ. Code § 2924c[6] because the

12  amount stated on the notice of default included sums "based upon the undisclosed effect of the YSP;"

13  (2) she is entitled to rescission of the note and deed due to Downey's fraud and her own unilateral

14  mistake of fact.[7] Plaintiff does not address any federal preemption arguments in her papers.

15       U.S. Bank argues that plaintiff's claims, insofar as they are based on the insufficient disclosure

16  of the YSP, are preempted by federal law. U.S. Bank argues that federal law alone governs Downey's

17

18       [5] Although it appears plaintiff is suing for rescission against all defendants (i.e. Downey, Deutsche Bank, and FCI), her allegations hinge on *Downey's* alleged failure to disclose the effect of the YSP as the originator of the loan. The Court accordingly construes her arguments as limited to Downey's conduct.

19

20

21       [6] "[Cal. Civ. Code §§] 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale. . . .." Moeller v. Lien, 25 Cal. App. 4th 822, 830 (Cal. Ct. App. 1994). Plaintiff relies on Miller v. Cote, 127 Cal. App. 3d 888, 894 (Cal. Ct. App. 1982) which held that "a trustee's sale based on a statutorily deficient notice of default is invalid." In Miller, the Court of Appeal held that a notice of default was fatally flawed the breach it described had not actually happened. The Court therefore held the notice did not set forth the nature of the breach as required by § 2924. Miller is inapposite to plaintiff's YSP argument because Downey properly disclosed the YSP and plaintiff was obligated to pay it. As further discussed *infra*, plaintiff has not made a showing that the Notice was otherwise incorrect. Plaintiff has therefore failed to demonstrate that the notice did not accurately reflect a breach.

22

23

24

25

26       [7] Plaintiff's rescission claims for fraud and unilateral mistake of fact are based on Cal. Civ. Code § 1689(b)(1) (2008) ("A party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.")

27

28

disclosure obligations, and federal law imposes no obligation of a lender to disclose the impact of a YSP on a borrower's interest rate.

    **b.**    <u>Analysis</u>

        i)    State Law Claims are Preempted by Federal Disclosure Requirements

The first question for the Court is whether federal law preempts plaintiff's state law claims based on inadequate disclosures of the YSP.   Congress may delegate its authority to preempt state laws to a federal agency, as it did through the Home Owners' Loan Act ("HOLA") and the creation of the Office of Thrift Supervision ("OTS".)  In enacting HOLA, Congress gave the OTS all necessary authority to promulgate regulations regarding federal savings associations with the same preemptive force as direct congressional legislation.  <u>Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta</u>, 458 U.S. 141, 162-63 (1982).  U.S. Bank argues Downey is a federal savings and loan association, and plaintiff has not alleged, argued, or shown otherwise.  Accordingly, the Court finds that the OTS regulations apply to Downey.

    12 C.F.R. § 560.2, one of the federal regulations governing federal savings and loan associations, expressly provides that a federal thrift's lending activities are not to be regulated by state law:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities

12 C.F.R. § 560.2(a).  Section 560.2 also provides examples of specific types of state laws that are preempted, including any state law that imposes any requirements regarding loan disclosures and advertising. 12 C.F.R. § 560.2(b).  Thus, any state law that purports to regulate a federal savings and loan's lending activities, and more specifically its loan related disclosure and advertising practices, is expressly preempted.  <u>Silvas v. E*Trade Mortg. Corp.</u>, 514 F.3d 1001, 1005 (9th Cir. 2008).

    "'When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects

- 10 -

lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c) [providing that state laws of general applicability only incidentally affecting federal savings associations are not preempted]. For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.'" Id. (citing the OTS' provision for proper preemption analysis under § 560.2, OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)).

Under this paradigm, the Court must determine whether the state laws invoked in plaintiff's claims, as applied, are the type of state laws contemplated for preemption under 12 C.F.R. § 560.2(b). Silvas, 514 F.3d at 1006. Each of plaintiff's state law rescission causes of action are premised on the inadequacy of Downey's *disclosure* of the YSP, conduct which is expressly regulated by § 560.2(b). Therefore, the state law rescission causes of action are preempted by federal law. Id. (holding the plaintiffs' California unfair competition law claims were preempted because the plaintiff's claims, as applied, were based on the defendant federal thrift's disclosures, advertising and loan fees; all types of state laws preempted by 12 C.F.R. § 560.2(b)).[8]

> ii)  Federal Law Does Not Require Disclosure of the Effect of a YSP

Given that federal law exclusively governs Downey's loan disclosures,  the next question is whether federal law requires disclosure of a YSP's effects on a borrower's interest rate.  Although the Ninth Circuit has not addressed this issue, other persuasive authority indicates TILA and its implementing regulations do not require lenders to disclose a YSP as part of a loan's finance charge or to explain its impact on a loan's interest rate.

TILA requires lenders to disclose finance charges.  15 U.S.C. § 1632(a).  Under TILA,

---

[8]  At oral argument, plaintiff's counsel cited Hauk v. JP Morgan Chase Bank United States, 552 F.3d 1114 (9th Cir. 2009) to support his newly-raised argument that if TILA does not apply to disclosure of the YSP, plaintiff's state causes of action grounded on YSP-based theories are not preempted by federal law.  Not only is Hauk factually distinguishable because it involved allegedly improper disclosures made by a consumer credit card company, but Hauk's legal reasoning is distinguishable as well.  Hauk held that a credit card company's disclosures did not violate TILA, but that questions of material fact remained as to whether the card company had violated state law based on conduct *independent* of those disclosures. Here, the conduct underlying plaintiff's state law claims relates solely to Downey's disclosure of the YSP; conduct which is exclusively governed by TILA. The Court finds Hauk to be inapplicable.

1   borrower-paid mortgage broker fees qualify as finance charges, whether those fees are paid directly

2   to the broker, or paid directly to the lender for delivery to the broker. 12 C.F.R. § 226.4(a)(3); 15

3   U.S.C. § 1605(a)(6).  However, the Federal Reserve Board has clarified that fees paid "to a broker as

4   a 'yield spread premium' that are already included in the finance charge, either as interest or as points,

5   should not be double counted" on the TILA Disclosure Statement. 61 F.R. 26126, 26127 (1996); 61

6   F.R. 49237, 49238-49239 (1996);  Stump v. WMC Mortg. Corp., 2005 U.S. Dist. LEXIS 4304, at

7   *10-11 (E.D. Pa. Mar. 16, 2005).  See also In re Meyer, 379 B.R. 529, 544 (Bankr. E.D. Pa. 2007)

8   ("Although the yield spread premium serves to increase the rate of interest, a lender is not required

9   to break down the components of the finance charge to disclose the separate existence of the yield

10  spread premium as a component of the finance charge."); Noel v. Fleet Fin., Inc., 34 F. Supp. 2d 451,

11  457 (E.D. Mich. 1998) (under TILA, a lender is not required to break down the components of the

12  finance charge to disclose the separate existence of a yield spread premium).

13          Here, Downey disclosed the amount of the YSP, and that amount was added to the total loan

14  amount, to be paid for as part of the interest on the loan; the YSP was therefore included in the loan's

15  finance charge.  As such, Downey was not required to break out the components of the finance charge

16  to disclose the separate existence of the YSP.  Plaintiff has not shown that Downey failed to make a

17  disclosure that warrants rescission of the note or deed under federal law.

18  *4.      Mathematical Error in Notice of Default*

19          The notice of default alleged an amount due of $4,956.06 from the time plaintiff stopped

20  paying her mortgage in November 2007 to February 20, 2008.  Plaintiff's statement of facts alleges

21  that notwithstanding the effect of the improperly disclosed YSP, the breach amount was overstated

22  by $72.84.  U.S. Bank does not respond to these allegations.

23          Plaintiff reaches her conclusion based on the fact that her monthly payments were $896.37,

24  and on the unsubstantiated assertions that Downey's monthly late charge was $48.18, and the

25  applicable statutory fees were $1,105.  Plaintiff fails to tie these factual allegations to any legal

26  argument in her motion, does not support the amount of the late charges with any evidence, and does

27  not cite to the statute from which she derives the alleged statutory penalties.  As such, the Court finds

28  that there has been no "clear showing" of success on the merits of any of plaintiff's claims based on

these allegations. <u>Mazurek</u>, 520 U.S. at 972 ("'a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (citation omitted).

**B.      Irreparable Injury**

A preliminary injunction "may only be granted when the moving party has demonstrated a significant threat of irreparable injury." <u>Simula, Inc v. Autoliv, Inc.</u>, 175 F.3d 716, 725 (9th Cir. 1999). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. " <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974). Establishing a risk of future harm is insufficient, the harm must be imminent. <u>Caribbean Marine Serv. Co., Inc. v. Baldridge</u>, 844 F.2d 688, 674 (9th Cir. 1988). Even if plaintiffs establish success on the merits, "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." <u>Siegel v. Le Pore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000).

Although the foreclosure sale terminated plaintiff's ownership in the property, the property is still her primary residence, and loss of a primary residence constitutes irreparable harm. <u>See Avila v. Stearns Lending, Inc.</u>, 2008 WL 1378231, at *3 (C.D. Cal. April 7, 2008); <u>Nichols v. Deutsche Bank Nat. Trust Co.</u>, 2007 WL 4181111, at *2 (S.D. Cal. Nov. 21, 2007); <u>Wrobel v. S.L. Pope & Assocs.</u>, 2007 WL 2345036, at *1 (S.D. Cal. June 15, 2007). Plaintiff has therefore shown a significant threat of irreparable injury.

**C.      Balance of Hardships**

*1.      Parties' Arguments*

Plaintiff argues the balance of hardships favors injunction. If the injunction is not issued, plaintiff could lose her home regardless of the outcome of the lawsuit. If the injunction is issued, but defendants are victorious, they still possess the deed securing the note and may take possession of the property. Plaintiff further argues that Deutsche Bank has nothing to lose as trustee, because it is merely acting as Downey's agent. Plaintiff argues that even if defendants ultimately prevail, they will lose nothing by waiting to enforce the writ of execution until this case has been heard on the merits.

U.S. Bank argues the median home value in plaintiff's ZIP code declined by 37% in 2008, and

stresses that this downward trend shows no sign of slowing down.  U.S. Bank attaches a "San Diego Union Tribune Zip Code Chart" in support of this argument.  (Marum Decl. ISO Opp., Ex. B.)  U.S. Bank argues it cannot market and sell the home until plaintiff is evicted, and it therefore loses money so long as plaintiff remains in the residence.  U.S. Bank also points out that plaintiff has been living in the house for free since November 2007.

2.      *Analysis*

Before an injunction may issue, the court must identify the hardship an injunction may cause the defendant and weigh it against the threatened harm to the plaintiff.  "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly."  State of Alaska, ex rel. Yukon Flats School Dist. v. Native Village of Venetie, 856 F.2d 1384, 1389.

Although plaintiff has demonstrated a significant threat of irreparable injury, Downey has also shown that it will suffer harm  if the Court grants the preliminary injunction.  The ownership interest in the property passed to Downey after the foreclosure sale, and Downey is losing money on that interest due to the decreasing property values in the area of the subject property.   Because Downey has also made a showing of significant harm, plaintiff's burden of showing a likelihood of success on the merits is more substantial.  As discussed *supra*, plaintiff has failed to show even a "fair chance" of success on the merits, which is the "irreducible minimum" showing for injunctive relief, regardless of the balance of hardships.  See Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1429 (9th Cir. 1995).  Accordingly, the Court finds injunctive relief is not presently warranted.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary injunction is DENIED.

**IT IS SO ORDERED.**

**DATED:  March 17, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**